WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Fidelity National Financial, )
Inc., a Delaware )
corporation, Fidelity )
Express Network, Inc., a )
California corporation, )
                         )
            Plaintiffs, )   No. MC 11-00072-PHX-RCB
                         )
        vs.              )        O R D E R
                         )
Colin H. Friedman, *et al.* )
                         )
            Defendants.  )
_____)

    This dispute, now in its second decade, pertains to the
latest attempt by plaintiffs, Fidelity National Financial,
Inc. and Fidelity Express Network, Inc. ("Fidelity"), to
enforce a judgment.  Fidelity obtained that judgment which,
with interest, now totals over $10 million dollars, against
defendants Colin H. Friedman, Hedy Kramer Friedman, Farid

1  Meshkatai, and Anita Kramer Meshkatai[1] following a trial in
2  the United States District Court for the Central District of
3  California (the "California judgment").  California, as the
4  rendering court, entered that judgment on July 12, 2002.  As
5  28 U.S.C. § 1963 allows,  Fidelity registered its California
6  judgment in this Arizona district court.  The Certification
7  of Judgment issued by the California court, along with an
8  order of that court allowing Fidelity to register its
9  judgment in this district court, although the action was on
10 appeal, was entered here on November 18, 2002 (the "First
11 Arizona Registered Judgment").  In accordance with A.R.S.
12 § 12-1551(B), that judgment would "become[] unenforceable
13 after five years from the date of entry unless action [wa]s
14 taken to renew it."  <u>Fidelity National Financial, Inc. v.</u>
15 <u>Friedman</u>, 855 F.Supp.2d 948, 963 (D.Ariz. 2012) ("<u>Fidelity</u>
16 <u>V</u>") (quoting <u>In re Smith</u>, 209 Ariz. 343, 101 P.3d 637) (other
17 citation omitted).  Put differently, absent renewal, the
18 Arizona registered judgment would have expired on November
19 18, 2007.

20      Fidelity attempted renewal on April 5, 2007, by filing
21 what this court has previously referred to as "the 2007
22 Certification[.]"  <u>Fidelity V</u>, 855 F.Supp.2d at 954.
23 Eventually, this court vacated that 2007 Certification,

24

---

25      [1]    More specifically, that judgment was rendered against "Colin H.
26 Friedman, individually and as trustee of the Friedman Family Trust UDT,
   ..., Hedy Kramer Friedman, individually and as trustee of the Friedman
27 Family Trust UDT, . . . , Farid Meshkatai, and Anita Kramer Meshkatai,
   individually and as trustee of the Anita Kramer Living Trust . . . , and
28 each of them, jointly and severally[.]" Certification (Doc. 1) at 2-3.

1  holding that although Fidelity permissibly re-registered the

2  First Arizona Registered Judgment pursuant to 28 U.S.C.

3  § 1963, that re-registration was not timely under Arizona

4  law.  See id. at 968-979.

5      In the interim, on May 26, 2011, Fidelity filed a

6  certification of the California Judgment in the United States

7  District Court for the Western District of Washington (the

8  "Washington Registered Judgment"[2]).  Fidelity Nat. Financial,

9  Inc. v. Friedman, No. 2:11-mc-0072 (W.D.Wash.).  Several

10  months later, on July 7, 2011, Fidelity filed the Washington

11  Registered Judgment in this court (the "Second Arizona

12  Registered Judgment"[3]).  Currently pending before the court is

13  defendants' "motion . . . for relief from judgment pursuant to

14  Rule 60(B) [sic] of the Federal Rules of Civil Procedure;

15  and/or to vacate the certification of judgment for

16  registration in another district[,]" Mot. 9 at 1:14-17

17  (emphasis omitted), "and relieve the[m] . . . from any

18  judgment created as a result of that filing."  Id. at 9:21-

19  23.[4]

20               ***Background***

21      The long and somewhat convoluted  history of Fidelity's

22  attempts to enforce the California judgment have been

23

24      [2]    This designation is for convenience only and it shall not be

25  accorded any legal significance.

26      [3]    Again, this designation is for convenience only and it shall not
be accorded any legal significance.

27      [4]    For ease of reference, all citations to page numbers of docketed

28  items are to the page assigned by the court's case management and
electronic case filing (CM/ECF) system.

1  chronicled in prior decisions of this court and others,
2  familiarity with which is presumed.  More recently, as just
3  mentioned, on May 26, 2011,  in the Western District of
4  Washington, Fidelity filed a "Certification of Judgment For
5  Registration In Another District[.]" Fidelity, No. 2:11-mc-
6  0072 (W.D.Wash.) (Doc. 1) That Certification, dated March 7,
7  2011, was issued by the Clerk of the California court, and
8  indicated that a certified copy of the California judgment was
9  attached thereto.  Id.  The defendants were not served with
10  the Washington Registration until nearly nine months later  –
11  on December 1, 2011.  See Jike Decl'n (Doc. 16-1) at 2, ¶ 4,
12  and exh. A thereto (Doc. 16-2) at 2-3.

13      Thereafter, on July 7, 2011, in this Arizona district
14  court, Fidelity filed the exact same Certification of
15  Judgment, attaching the California judgment, which it had
16  previously filed in the Washington Court.  That particular
17  certification was certified by the Clerk of the Court for the
18  Western District of Washington, however.  Certification (Doc.
19  1) at 1.  Again, there was a delay in service upon the
20  defendants.  They were not served with the Second Arizona
21  Registered Judgment until nearly five months later, on
22  December 1, 2011.  See Jike Decl'n (Doc. 16-1) at 2, ¶ 4, and
23  exh. A thereto (Doc. 16-2) at 2-3.  Fidelity has not executed
24  upon either the Washington Registered Judgment or the Second
25  Arizona Registered Judgment as against defendants' property,
26  id. at ¶¶ 2 and 3; and, it is not attempting to do so at this
27  juncture.
28      In the meantime, Fidelity timely renewed the California

judgment in that rendering court,[5] extending the period of enforceability for ten years. See Cal. Code Civ. Proc. § 683.120(b).  Consequently, Fidelity's California judgment still is enforceable there.  In reliance upon the renewed California judgment, the Washington court granted Fidelity's *ex parte* application to extend the Washington Registered Judgment.  See <u>Fidelity</u>, No. 11-mc-00072 (W.D.Wash.), Ord. (Doc. 3).  It thus appears that Fidelity has "an additional ten years during which an execution, garnishment, or other legal process may be issued[]" as to the Washington Registered Judgment, RCW 6.17.020(3), whereas the First Arizona Registered Judgment is no longer enforceable here.

### ***Summary of Arguments***[6]

The primary thrust of defendants' motion is that the court should vacate the Second Arizona Registered Judgment because the "Washington [Registered] Judgment . . . is not a 'new' Judgment capable of re-registration" in this court. Mot. (Doc. 9) at 8:13-14.  Relatedly, defendants argue that the Washington Registered Judgment "is void for lack of due process and personal jurisdiction over" them, and hence it cannot be registered here.  <u>Id.</u> at 4:1-2, ¶ 12.

Relying solely upon <u>Del Prado v. B.N. Dev. Co.</u>, 602 F.3d 660 (5th Cir. 2010) ("<u>Del Prado II</u>"), and pursuant to 28 U.S.C.

---

[5]    <u>Fidelity</u>, No. 11-mc-00072 (W.D.Wash.), "Ex Parte Order Extending Judgment" (Doc. 3) at 2.

[6]    Given the court's intimate familiarity with this action and because the issues have been fully briefed, in its discretion the court denies the parties' request for oral argument as it would not aid the decisional process. <u>See</u> Fed.R.Civ.P. 78(b); <u>Partridge v. Reich</u>, 141 F.3d 920, 926 (9th Cir. 1998).

1 § 1963, Fidelity counters that it properly successively

2 registered the Washington Registered Judgment in this court.

3 Moreover, Fidelity asserts that "any perceived deficiency" in

4 the Washington Registered Judgment should be resolved by that

5 court.  Resp. (Doc. 16) at 2:21.

6 ***<u>Discussion</u>***

7 ***<u>I.  Requests for Judicial Notice</u>***

8        Before addressing these substantive arguments, the court

9 must consider the parties' separate Requests for Judicial

10 Notice ("RJN") made pursuant to Fed.R.Evid. 201.  Although

11 the parties  cite to subsection (d) of that Rule, clearly that

12 was not their intent.  Rule  201(d) governs the timing of when

13 a court may take judicial notice, not the substantive basis

14 for such a request.  From the content of their respective

15 requests, clearly the parties intended to rely upon Rule

16 201(b)(2).  That Rule allows a court to take judicial notice

17 of "a fact that is not subject to reasonable dispute because

18 it . . . can be accurately and readily determined from sources

19 whose accuracy cannot be reasonably question."  Fed. R. Evid.

20 201(b)(2).

21        Here, the sources of the parties' RJNs are all court

22 filings in this or several closely related actions.  Because

23 these filings are all matters of public record, they are

24 properly the subject of judicial notice.  <u>See</u>, <u>e.g.</u>, <u>Terenkian</u>

25 <u>v. Republic of Iraq</u>, 694 F.3d 1122, 1137 n. 8 (9th Cir. 2012)

26 (citation omitted) (granting RJNs "of certain pleadings and

27 court filings in the New York litigation submitted" by the

28 parties); <u>Reyn's Pasta Bella, LLC v. Visa USA, Inc.</u>, 442 F.3d

741, 746 n. 6 (9th Cir. 2006) ("court filings and other matters of public record" were "readily verifiable and, therefore, the proper subject of judicial notice[]"); <u>Kourtis v. Cameron</u>, 419 F.3d 989, 994 n. 2 (9th Cir. 2005) (citation omitted) ("court records from related proceedings can be taken into account without converting a motion to dismiss into a summary judgment motion[ ]"), *overruled on other grounds*, <u>Taylor v. Sturgell</u>, 553 U.S. 880, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008). Therefore, the court grants the parties' respective RJNs (Docs. 14 and 17).

## II.  *Second Arizona Registration*

First, the defendants broadly contend that the court must vacate the Second Arizona Registered Judgment because "Arizona law does not allow for re-registration of the same judgment." Mot. (Doc. 9) at 12:8-9; at 14:17-18 (emphases omitted). Arizona law does not apply, Fidelity counters, because the issue is not one of execution upon a judgment.  Rather, from Fidelity's perspective, the issue pertains to registration under federal law, and 28 U.S.C. § 1963 in particular.  Thus, Fidelity argues that the Second Arizona Registration is governed strictly by federal law.

### A.  *Governing Law*

The court agrees with the defendants that Rule 69(a) "provid[es] that the procedure on execution is to be in accordance with the procedure of the state in which the district court is located at the time the remedy is sought." <u>See</u> <u>Hilao v. Estate of Marcos</u>, 536 F.3d 980, 987 (9th Cir. 2008).  The court cannot agree, however, with defendants'

1  extrapolation from that Rule  -- that "Arizona law governs *all*
2  *proceedings* with respect to the [Second] Arizona" Registered
3  Judgment.  Mot. (Doc. 9) at 12:15-16 (emphasis added).

4      There is nothing in the plain language of Rule 69 to
5  support such an expansive reading of that Rule.  In fact, Rule
6  69(a)(1) carefully limits its application to execution of
7  judgments, stating in pertinent part:

8              The procedure on execution—and in
             proceedings supplementary to and in
9            aid of judgment or execution—must
             accord with the procedure of the
10           state where the court is located[.]

11 Fed.R.Civ.P. 69(a)(1).  The issues herein do not pertain to
12 such proceedings.

13     Moreover, Rule 69(a)(1) is equally clear that "a federal
14 statute governs to the extent it applies."  Id.  In the
15 present case, the primary issue is whether the Washington
16 Registered Judgment "create[d] a wholly new judgment that can,
17 in turn, be re-registered to create a wholly new judgment" in
18 this jurisdiction, despite the expiration of the First Arizona
19 Registered Judgment and its untimely re-registration.  See De
20 Leon v. Marcos, 742 F.Supp.2d 1168, 1172 (D.Colo. 2010) ("De
21 Leon I"), vacated and remanded on other grounds, 659 F.3d 1276
22 (10th Cir. 2011) ("De Leon II").  Resolution of that issue
23 implicates section 1963  - the federal registration of
24 judgments statute.  Thus, there is no merit to the defense
25 argument that based upon Rule 69(a), Arizona law governs "all
26 proceedings" as to the Second Arizona Registered Judgment.
27 See Mot. (Doc. 9) at 12:16.

28     In addition, the court fails to see defendants' perceived

1   inconsistency between section 1963's provision that "[t]he
2   procedure prescribed under this section is in addition to the
3   other procedures provided by law for the *enforcement* of
4   judgments[,]" and Fidelity's argument that only federal law
5   applies here.  See 28 U.S.C. § 1963 (emphasis added).  The
6   defendants are overlooking section 1963's unequivocal
7   "enforcement" language, just quoted, which is not an issue at
8   this juncture.

9       Likewise, there is no merit to defendants' contention
10  that this Court *must* apply Arizona law in reviewing the issues
11  on this Motion[,]" because purportedly  "the Ninth Circuit has
12  unequivocally recognized the applicability of state law in
13  dealing with the *registration*, renewal and enforcement of
14  judgment in the district in which the judgment is sought to be
15  enforced."  Reply (Doc. 20) at 7:18; and 7:3-5 (emphasis
16  added).  Significantly, in not one of the cases to which the
17  defendants cite or mention did the court apply state law in
18  "dealing with registration[.]"[7]  See id. at 7:4.  Those courts
19  dealt, instead, with the application of state law in the
20  context of execution, and "proceedings supplementary to and in
21  aid of judgment or execution[,]" Fed.R.Civ.P. 69(a)(1), such
22  as enforcement of judgments.  See Fidelity Nat. Financial Inc.
23  v. Friedman, 602 F.3d 1121, 1122 (9th Cir. 2010) (emphasis
24  added) (certifying to the Arizona Supreme Court two issues
25  regarding whether Fidelity's actions "were sufficient under

26
27      [7]     Nor has the court's independent research unearthed any Ninth
28  Circuit case law applying state law when dealing with federally registered
    judgments.

1  Arizona law to *renew* the prior registration of a judgment");

2  <u>Hilao</u>, 536 F.3d at 987-988 (emphasis added) (Rule 69(a)

3  "provid[es] that the *procedure on execution* is to be in

4  accordance with the procedure of the state in which the

5  district court is located at the time the remedy is sought.");

6  <u>Gagan v. Sharar</u>, 376 F.3d 987, 988 (9th Cir. 2004) (emphasis

7  added) ("This case concerns *execution* in a community property

8  state of a judgment obtained in a common law state."); and

9  <u>Mantanuska Valley Lines, Inc. v. Molitor</u>, 365 F.2d 358, 359-60

10 (9th Cir. 1966)(citation omitted) (emphasis added) ("[T]he

11 *enforcement of a judgment* of a sister state may be barred by

12 application of the statute of limitations of the forum

13 state.") Thus, especially with no case authority to support

14 the defendants' contrary argument, the court is not convinced

15 that Arizona rather than federal law applies to the

16 registration issues herein.

17      **B.  *Federal Law***

18      Section 1963 states, in relevant part:

19          A judgment in an action for the recovery of
            money or property entered in any . . . district
20          court, . . . may be registered by filing a
            certified copy of the judgment in any other
21          district[,] when the judgment has become final
            by appeal or by expiration of the time for
22          appeal[.]. . . . A judgment so registered shall
            have the same effect as a judgment of the district
23          court of the district where registered and
            may be enforced in like manner. . . .
24

25 28 U.S.C. § 1963.  Here, the issue is whether a judgment

26

27

28

1   registered in a federal court pursuant to that statute[8]

2   creates a new judgment that can, in turn, be "re-registered"

3   in a second federal court, although that "re-registered"

4   judgment previously had been registered in that second court,

5   where it had  expired and was not timely re-registered.  This

6   novel issue appears to be one of first impression.

7          With conflicting results, three other courts have

8   addressed the narrower issue of whether "registration of a

9   judgment pursuant to 28 U.S.C. § 1963 create[s] a wholly new

10  judgment that can, in turn, be re-registered to create wholly

11  new judgments in other jurisdictions[.]"  See De Leon I, 742

12  F.Supp.2d at 1172 (noting that this issue "is the same one

13  faced by the Northern District of Texas [in Del Prado v. B.N.

14  Dev. Co., 4:05-CV-234-Y (N.D. Tex. Jan. 9, 2009) ("Del Prado

15  I")] and the 5th Circuit [in Del Prado II]").  The district

16  courts in De Leon I and Del Prado I, answered in the negative,

17  but the Fifth Circuit answered in the affirmative in Del Prado

18  II.

19         The Fifth Circuit's Del Prado II decision is the sole

20  basis for Fidelity's argument that section 1963 permits what

21  that Court has termed "'successive registration.'"  See Del

22  Prado II, 602 F.3d at 662.  Strenuously opposing application

23  of Del Prado II, the defendants argue that Fidelity's reliance

24  thereon is "misplaced[]" because that case is distinguishable.

25

26          [8]    There is nothing on the face of either the May 26, 2011,
    Certification of Judgment filed in Washington, or on the Certification of
27  Judgment filed in this court on July 7, 2011, indicating the bases for
    those filings.  The court adopts the parties' operating assumption that 28
28  U.S.C. § 1963 was the statutory basis for both.

1  Mot. (Doc. 9) at 14:22.  Thus, regardless of whether this

2  court finds the <u>Del Prado II</u> reasoning "persuasive," the

3  defendants contend it simply has no applicability here. <u>See</u>

4  <u>id.</u> at 16:27.  Additionally, the defendants point to <u>De Leon</u>

5  <u>I</u>, where the district court found, *inter alia*, that <u>Del Prado</u>

6  <u>II</u> "incorrectly applied prior precedent[.]" <u>De Leon I</u>, 742

7  F.Supp.2d at 1176.  Moreover, from defendants' viewpoint, the

8  court's  rationale in <u>De Leon I</u> is consistent with Arizona

9  law, which requires strict compliance with renewal of judgment

10 statutes.

11      With equal vigor, Fidelity argues that <u>Del Prado II</u> is

12 sufficiently analogous to the present case such that its

13 reasoning should apply here.  Fidelity thus maintains, based

14 upon the Fifth Circuit's <u>Del Prado II</u> decision and section

15 1963, that it permissibly "successively"  re-registered its

16 Washington Registered Judgment in this Arizona district court.

17      The parties' divergent views of <u>Del Prado II</u>, especially

18 when coupled with the conflict between <u>Del Prado II</u> and <u>De</u>

19 <u>Leon I</u>, warrant a close examination of each.  The court will

20 also look to the district court's decision in <u>Del Prado I</u>.

21 Ordinarily, this court would not consider such a case because

22 of its reversal on appeal.  Given the paucity of relevant case

23 law, however, and because the <u>Del Prado I</u>'s reasoning aligns

24 with what this court finds to be the thorough and thoughtful

25 analysis in <u>De Leon I</u>, <u>Del Prado I</u> also is noteworthy.

26      The genesis for both <u>Del Prado</u> and <u>De Leon</u> was a class

27 action commenced in the District of Hawaii, claiming human

28 rights violations by now deceased Ferdinand Marcos, the former

president of the Philippines.  Following a trial, in 1995, the
Hawaii District Court entered a nearly $2 billion judgment in
favor of the class.  Pursuant to 28 U.S.C. § 1963, in early
1997, the class registered the Hawaiian judgment in the
Northern District of Illinois.  In the meantime, because the
class did not timely extend the judgment rendered in Hawaii,
by operation of Hawaiian law, that judgment was extinguished
on February 2005.  Hilao, 536 F.3d 980.

In April 2005, evidently following the transfer of the
Hawaii judgment to the Northern District of Texas, the class
commenced the Del Prado action.  It sought a declaration that
certain real property located in Texas was beneficially owned
by the Marcos estate.  The class also sought to execute and
foreclose upon that property in partial satisfaction of the
judgment rendered in Hawaii.  During the pendency of that
Texas enforcement proceeding, the  Illinois registered
judgment became dormant.  See 735 ILL. Comp. Stat. 5/12-
108(a).  Because of that, and having no enforceable judgment
in Hawaii, pursuant to Illinois law, the class filed a
petition for revival of the Illinois registered judgment.  The
petition was granted and on September 4, 2008, the Clerk of
the Court for the Northern District of Illinois entered the
revived judgment pursuant to Fed.R.Civ.P. 58.

Shortly thereafter, on October 7, 2008, pursuant to 28
U.S.C. § 1963, the class registered the revived Illinois
judgment in the District of Colorado.  Likewise, the next day,
in the Del Prado action, the class registered the revived
Illinois judgment in Texas.  On September 16, 2009, the class

1  commenced an action in Colorado seeking partial satisfaction
2  of the Hawaii judgment against Colorado real property which
3  allegedly had been beneficially owned by the Marcos estate
4  ("the De Leon action").

5  **_1. Del Prado I_**

6      The district court in Del Prado I  rejected plaintiffs'
7  argument that although the statute of limitations had run in
8  Hawaii, the rendering court, the Illinois registered judgment
9  created a new, independent judgment that could be re-
10 registered in the Texas district court pursuant to 28 U.S.C.
11 § 1963.  In rejecting that argument, the court looked first to
12 the "plain language" of that statute.  Del Prado I, Doc. 237
13 at 7.  More specifically, the Del Prado I court found section
14 1963, which on its face "allows for the registration of a
15 'judgment in an action for the recovery of money or property
16 entered' in any district court, after 'such judgment has
17 become final by appeal or expiration of the time for
18 appeal[,]'" . . . demonstrates that it is the _initial_
19 _judgment on the merits_ from the rendering court – i.e., the
20 'judgment in an action for the recovery of money or property'
21 – _that may be registered_." Id. at 7 (quoting 28 U.S.C.
22 § 1963) (emphasis added) (citations omitted).

23     Shifting from the text of section 1963, the Del Prado I
24 court also discussed the "scant . . . interpretative case law
25 surrounding" that statute.  See Euro-American Coal Trading,
26 Inc. v. James Taylor Mining, Inc., 431 F.Supp.2d 705, 707 n. 7
27 (E.D.Ky. 2006).  Factoring prominently in that discussion was
28 Stanford v. Utley, 341 F.2d 265 (8th Cir. 1965) (Blackmun, J.),

the seminal case construing section 1963, as well as <u>Home Port</u>
<u>Rentals, Inc. v. Int'l Yachting Group, Inc.</u>, 252 F.3d 399 (5th
Cir. 2001), and the Ninth Circuit's <u>Hilao</u> decision.  After
examining those cases, the <u>Del Prado I</u> court recognized that
"[u]ltimately, § 1963 *may* in fact allow registration of the
rendering court's judgment in more than one district." <u>Del</u>
<u>Prado I</u>, Doc. 237 at 11 (emphasis added)(citing <u>Board of</u>
<u>Trustees v. Elite Erectors, Inc.</u>, 212 F.3d 1031, 1034 (9th Cir.
2000)).  At the same time, however, as the <u>Del Prado I</u> court
was quick to point out, "the *Stanford*, *Home Port Rentals*, and
other courts to have addressed the issue acknowledge '[t]hat
the registered judgment might not be congruent with a new
judgment of the registration court for every purpose other
than enforcement.'" <u>Id.</u> (citation omitted).  Buttressed by the
Ninth Circuit's decision in <u>Hilao</u>, the district court
concluded <u>Del Prado I</u> was "such a case."  <u>Id.</u>

   <u>Hilao</u> and <u>Del Prado I</u> did raise different issues.  The
issue in <u>Hilao</u> was "whether registration extended the statute
of limitations that was applicable in the rendering court[,]"
whereas the issue in <u>Del Prado I</u> was "whether a registered
judgment may itself be registered despite the running of the
statute of limitations in the rendering court[.]" <u>Id.</u>
Nonetheless, the <u>Del Prado I</u> court found that those issues
raised the "same . . . concern[.]" <u>Id.</u>  In particular, either
way, adopting plaintiffs' position would mean "'that a federal
judgment is free of state limitations and can be enforced
forever.'" <u>Id.</u> at 11-12 (quoting <u>Hilao</u>, 536 F.3d at 987).
"Absent clear language in . . . section [1963] or binding

1  precedent requiring it to do so[,]" the district court in <u>Del</u>

2  <u>Prado I</u> declined to give "such an unbounded effect[]" to that

3  statute.  <u>Id.</u> at 12.

4  ### 2. Del Prado II

5      Reversing <u>Del Prado I</u>, and approving of "successive

6  registration," the Fifth Circuit held: "Because the Illinois

7  registered judgment was equivalent to a new federal judgment

8  with the same status as a judgment on a judgment, it was also

9  capable of being successively registered and enforced under §

10 1963 in the Northern District of Texas." <u>Del Prado II</u>, 602

11 F.3d at 661 and 669.  The Fifth Circuit, like the district

12 court, looked to the text of section 1963.  But, unlike the

13 district court, the Fifth Circuit selectively read in

14 isolation only a small part of section 1963. Not surprisingly

15 then, the Fifth Circuit's statutory interpretation differed

16 from the district court's.  More specifically, the Fifth

17 Circuit read part of "[t]he final sentence of  § 1963[9] [as]

18 "clearly stat[ing] that  "a registered judgment has 'the same

19 effect as a judgment of the district court of the district

20 where registered and may be enforced in like manner[,]' . . .

21 to mean that once the Hawaiian judgment was registered in

22 Illinois in 1997, [it] had the same effect as any judgment

23 rendered in the Northern District of Illinois and could be

24 enforced as a judgment rendered in the Northern District of

25 Illinois." <u>Id.</u> at 665 (footnote omitted and footnote added).

26

27          [9]     More accurately, the Court was reading the final sentence of the

28 first paragraph of section 1963, as opposed to the final sentence of that
    whole statute.

1    The Fifth Circuit, likewise, interpreted cases such as
2  Stanford, its own earlier Home Port Rentals decision, and
3  Hilao, differently than did the district court.  The Fifth
4  Circuit found that those cases, like section 1963, "support
5  the principal [sic] that a registered judgment has the same
6  effect as a rendered judgment."  Id. at 666.  Lastly,
7  "reinforce[d]" by Full Faith and Credit concepts, the Del
8  Prado II Court rejected defendants' argument that the Illinois
9  registered judgment should be "treated differently than [a]
10 judgment on a judgment[.]" Id. at 668.  The Court rejected
11 that argument, *inter alia*, because defendants did not show
12 lack of notice or that they were impeded from raising any
13 defense when the Illinois registered judgment was successfully
14 registered in Texas.
15    Putting aside for the moment the Fifth Circuit's
16 rationale, the court agrees with the defendants that given the
17 distinctions outlined below between Del Prado II and the
18 present case, Del Prado II does not control here.  The first
19 and most critical distinction is that unlike Fidelity, before
20 it attempted to register the Illinois judgment in Texas, the
21 judgment creditor in Del Prado II had not validly registered
22 the original Hawaii judgment in Texas, and allowed it to
23 expire there.  Consequently, the Fifth Circuit had no reason
24 to address the specific issue confronting this court:  whether
25 the Washington Registered Judgment created a new judgment that
26 can, in turn, be successively re-registered even though the
27 First Arizona Registered Judgment expired and it was not
28 timely re-registered here.  In fact, "[n]o case cited by *Del*

- 17 -

1  *Prado* [*II*] involves," as here, "a foreign judgment, registered

2  in one state, and an attempted registration in yet a third

3  state."  <u>See</u> <u>De Leon I</u>, 742 F.Supp.2d at 1175 n. 6.

4      <u>Del Prado II</u> is distinguishable on another basis.  There,

5  the defendants argued that the revived Illinois registered

6  judgment did not "qualify as an independent judgment because

7  it was not 'entered'" in the Illinois district court in

8  accordance with Fed.R.Civ.P. 58.  <u>Del Prado II</u>, 602 F.3d at

9  665.  Finding "no merit" to that argument, the Fifth Circuit

10  pointed out that "the revived Illinois registered judgment was

11  entered by the Clerk of the Court in the Northern District of

12  Illinois as a separate document entitled 'Judgment in a Civil

13  Case.'" <u>Id.</u>

14      Fidelity cannot avail itself of that logic, however,

15  because the Western District of Washington Court did not

16  separately enter any such document.  Rather, as the docket

17  sheet reflects, the predicate filing in that court was the

18  "Certification of Judgment for Registration in Another

19  District[]" issued by the rendering California court.  <u>See</u>

20  Defs.' RJN (Doc. 14), exh. G thereto (Doc. 14-7) at 3.  Nor,

21  as more fully explained herein, did <u>Del Prado II</u> raise the

22  specter, as does this action, that successive registration

23  would conflict with state law.  These differences demonstrate,

24  once again, "that Fidelity's reliance upon *Del Prado* [*II*] is

25  misplaced."  <u>See</u> <u>Fidelity V</u>, 855 F.Supp.2d at 970 (internal

26  quotation marks and citation omitted).

27          ***3.  De Leon I***

28      Even overlooking those distinctions (which it is not),

- 18 -

1  the court flatly rejects Fidelity's argument that <u>Del Prado</u>
2  <u>II</u>'s "reasoning . . . applies here." Resp. (Doc. 16) at 5:19.
3  The court rejects that argument because it, too, "respectfully
4  disagrees with the [Fifth] Circuit's reasoning[]" in <u>Del Prado</u>
5  <u>II</u>. <u>De Leon I</u>, 742 F.Supp.2d at 1172. Fidelity suggests that
6  this court should disregard <u>De Leon I</u> because "it has been
7  reversed[,]" and the Tenth Circuit found that decision to be
8  "void." Resp. (Doc. 16) at 6:26-27, n. 3 (citation omitted).
9  Actually, because the Tenth Circuit did not reach the merits,
10 it did not reverse the district court. Rather, it vacated and
11 remanded.

12     Regardless, this court is acutely aware that the Tenth
13 Circuit found <u>De Leon I</u> to be "void" because it was issued
14 after the parties' filing of a stipulation of dismissal, "and
15 therefore in the absence of jurisdiction." <u>De Leon II</u>, 659
16 F.3d at 1284 (citation omitted). Despite the foregoing, and as
17 previously noted, this court concurs with <u>De Leon I</u>'s rigorous
18 and sound analysis, wherein it found that the judgment
19 creditor could not re-register the Illinois revived judgment
20 in Colorado so as to support that enforcement action.

21     Several aspects of <u>De Leon I</u> heavily inform this court's
22 conclusion that, likewise, the Washington Registered Judgment
23 cannot be successfully re-registered in this Arizona district
24 court. Briefly, they are: (1) the nature of a  judgment which
25 can be registered pursuant to 28 U.S.C. § 1963; (2) the
26 attributes of a judgment registered under that statute; and
27 (3) the reasons why registered and domestic judgments are not
28 equivalent for all purposes. The court will discuss these

1  seriatim.

2       The first persuasive aspect of De Leon I is its

3  conclusion "that *only* an original judgment, issued by a court

4  upon the substantive merits of an adversarial dispute, can be

5  registered pursuant to 28 U.S.C. § 1963[.]" De Leon I, 742

6  F.Supp.2d at 1172.   The starting point for that conclusion was

7  "the fundamental legal axiom that a judgment is 'the final

8  determination of an action,' that embodies a court's

9  adjudication of 'a claim pressed and resisted (or the

10 opportunity for resistance) by adversaries'[.]"   Id. (10

11 Wright, Miller & Kane, *Federal Practice and Procedure*, Civil

12 3d Ed., § 2651, *quoting* In the Matter of Fidelity Tube, 167

13 F.Supp. 402, 404 (D.N.J. 1958)) (other citation omitted).

14      Scrutinizing the text of 1963, the court in De Leon I

15 explained, the language "authoriz[ing] registration of a

16 'judgment in an action for the recovery of money or property

17 entered in any court of appeals, district court, bankruptcy

18 court, or in the Court of International Trade[]' . . .

19 anticipates two requirements."   Id. at 1173.   The first is

20 "that a judgment has been *entered* by a court (as compared to a

21 'judgment' that comes into effect by being registered)[.]"

22 Id. (emphasis in original).   The second requirement is that

23 such a judgment "be entered in an action for the *recovery o[f]*

24 *money or property* (in essence, reflecting the adjudication of

25 a claim for tangible, not simply declaratory, relief)."   Id.

26 (emphasis in original).   That construction of section 1963, as

27 the De Leon I court persuasively reasoned, "is consistent with

28 the fundamental nature of a judgment —- a document reflecting

the determination of a claim on its merits." Id.

In juxtaposition, a registered judgment "is simply the perfection of an existing judgment in another jurisdiction so as to permit foreign enforcement." Id. This court agrees that "[i]nterpreted in this way, [section 1963] would appear to provide that *only* an original judgment resolving an adversarial proceeding for tangible relief can be registered in another jurisdiction." Id. (emphasis added).

The district court in Del Prado I did not so closely parse section 1963; but, as mentioned earlier, it similarly construed the plain text of that statute, finding that only the original judgment of the rendering court, "in an action for the recovery of money or property[,]" may be registered. Del Prado I, Doc. 237 at 7 (internal quotation marks and citations omitted). The court in Del Prado I bolstered that reading of section 1963 by astutely observing that "it could not seriously be contended that when a clerk enters the judgment of another district court on the docket of his own court he has created a final judgment that may be appealed pursuant to 28 U.S.C. § 1291." Id. at 8 (citing, *inter alia*, 28 U.S.C. § 1963) (allowing registration only after the rendering court's judgment is final).

Based upon the straightforward and unequivocal language of 28 U.S.C. § 1963, this court agrees with the De Leon I and Del Prado I courts: that statute permits registration in another district only of judgments which have been entered by the rendering court, and which were entered following the "adjudication of a claim for tangible . . . relief[.]" See De Leon I, 742 F.Supp.2d at 1173. The Washington Registered

1  Judgment fits neither requirement.  There was no entry of a
2  judgment in the Western District of Washington, as previously
3  explained.

4      Additionally, the Washington Registered Judgment is  not
5  "an original judgment, issued by a court upon the substantive
6  merits of an adversarial dispute[.]" <u>See</u> <u>id.</u> at 1172.  Rather,
7  the original judgment was issued and entered in the California
8  Court following a jury trial.  Consequently, the Washington
9  Registered Judgment is "simply the perfection of [the] existing
10 [California] judgment in another jurisdiction so as to permit
11 foreign enforcement."  <u>See</u> <u>id.</u>  Thus, regardless of defendants'
12 due process and personal jurisdiction concerns, the Washington
13 Registered Judgment cannot be re-registered in this court
14 because it is not a judgment capable of registration within the
15 meaning of section 1963.

16     The <u>De Leon I</u> court's analysis of the "attributes" of a
17 registered judgment is just as compelling as its textual
18 argument, and further convinces this court that the Washington
19 Registered Judgment cannot be successfully re-registered in
20 this court.  <u>See</u> <u>id.</u>  The Fifth Circuit in <u>Del Prado II</u> held
21 that the registration of a judgment under section 1963 creates
22 a new judgment that has "*all* of the attributes of a judgment
23 rendered by [the jurisdiction of registration]," that, in turn
24 "may be re-registered" in other jurisdictions.  <u>Del Prado II</u>,
25 602 F.3d at 667 (emphasis added).  Disagreeing, the court in <u>De</u>
26 <u>Leon I</u> recognized that "although one might equate a registered
27 judgment with a domestic judgment for purposes of enforcement
28 in the state of registration, there is no particular reason to

conclude that a registered judgment has all of the collateral features of a domestic judgment, such the ability to be (re-)registered in yet another jurisdiction." De Leon I, 742 F.Supp.2d at 1175.

The court arrived at that conclusion after dissecting Stanford, "[t]he seminal case grappling with the issue" of "what attributes [a] registered judgment has[,]" and also looking to the Fifth Circuit's "own prior reasoning" in Home Port Rentals. Id. at 1173 and 1175. In Stanford, the Court held that if a judgment is properly registered in one state pursuant to 28 U.S.C. § 1963, it may be enforced within the limitations period of that registration state, despite the running of the time for enforcement in the rendering state. Explicitly "not[ing] by way of caveat that § 1963 presents much to be answered in the future[,]" then Judge Blackmun "emphasize[d] that [its] conclusion . . . is one having application to the fact situation in this case." Stanford, 341 F.2d at 271 (emphasis added). Indeed, the Stanford Court deliberately left unanswered a "string of hypothetical questions[,]" De Leon I, 742 F.Supp.2d at 1174, the most significant of which, for present purposes, is whether "a registered judgment itself [is] subject to registration elsewhere?" Stanford, 341 F.2d at 271. In carefully limiting its holding, the Stanford Court circumspectly stated that it was "not . . . go[ing] so far as to say that registration effects a new judgment in the registration court for every conceivable purpose; nor do we say that it fails to do so for any particular purpose." Id.

1    Despite that careful limitation, as the De Leon I court

2 astutely pointed out, the Fifth Circuit in Del Prado II,

3 "cited *Stanford* and other cases . . . , for a broader

4 proposition that 'a registered judgment is equivalent to a new

5 federal judgment.'" De Leon I, 742 F.Supp.2d at 1174 (quoting

6 Del Prado II, 602 F.3d at 666, citing Stanford, 341 F.2d at

7 269-270).  In particular, the Fifth Circuit "fail[ed] to

8 acknowledge that prior precedent equates registered and

9 domestic judgments *only* for purposes of enforcement in the

10 state of registration." Id. at 1175 (emphasis added).  As the

11 court in De Leon I cogently explained:

12          Cases such as *Stanford* and *Home Port Rentals*
          make clear that, although one might equate a
13          registered judgment with a domestic judgment
          for purposes of enforcement in the state of
14          registration, there is no particular reason
          to conclude that a registered judgment has
15          all of the collateral features of a domestic
          judgment, such [as] the ability to be (re-)
16          registered in yet another jurisdiction.

17 Id.  In light of the foregoing, and the other persuasive

18 reasons more fully set forth in De Leon I, this court agrees

19 with its assessment that Del Prado II "incorrectly applied

20 prior precedent." See id. at 1176.  Thus, borrowing the De

21 Leon I rationale, this court finds that the Washington

22 Registered Judgment does not have "all of the collateral

23 features of a domestic judgment, such [as] the ability to be

24 (re-) registered in yet another jurisdiction[,]" such as this

25 Arizona District Court. See id. at 1175.

26    Not satisfied with simply explaining its perceived flaws

27 in the Del Prado II analysis, the court in De Leon I

28 "proceed[ed] to examine . . . anew[]" the issue of whether

1  "registration of a judgment pursuant to 28 U.S.C § 1963

2  create[s] a wholly new judgment that can, in turn, be re-

3  registered to create wholly new judgments in other

4  jurisdictions?"  *Id.* at 1176; and at 1172.  That examination

5  provides equally compelling reasons why this court is guided by

6  De Leon I and not Del Prado II, as Fidelity urges.

7      As "[c]ases such as *Stanford* and *Home Port Rentals* . . .

8  wisely note," and the court further explained in De Leon I,

9  section 1963's "statutory language does not compel the

10 conclusion that a registered judgment is the equivalent of a

11 domestic judgment for *all* purposes."  Id. at 1175; and at 1176

12 (emphasis in original).  The De Leon I court provided several

13 well-founded "reasons why it is logical to differentiate

14 registered judgments and domestic judgments for purposes of

15 determining which can, in turn, be registered elsewhere."  Id.

16 at 1176.  "First, and perhaps most obviously," the De Leon I

17 court expressed understandable concern that "a rule equating

18 registered and domestic judgments for all purposes allows

19 judgment creditors to avoid any application of statutes of

20 limitation and repose applying to judgments."  Id. "The

21 practical effect" of such "serial registration . . . is that no

22 judgment could ever expire, and that creditors could simply

23 criss-cross the nation, registering and re-registering their

24 judgments in perpetuity."  Id.

25     The present case shows all too vividly how "serial

26 registration" would conflict with Arizona's statute of

27 limitations pertaining to actions on foreign judgments, thus

28 "mak[ing] a mockery out" of that statute.  See id.  In Fidelity

1  V, this court held that "Fidelity permissibly re-registered
2  [the] Arizona [registered] judgment under 28 U.S.C. § 1963 by
3  filing a second Certification of Judgment in this court[.]"
4  Fidelity V, 855 F.Supp.2d at 973 (footnote omitted).
5  Significantly, however, this court also found that re-
6  registration to be untimely under A.R.S. § 12-544(3)[10] because
7  "Fidelity's [First] Arizona [Registered] [J]udgment became
8  enforceable On December 3, 2002[,] . . . ten days after its
9  entry[,]" but "Fidelity did not even attempt to 're-register'
10 its judgment until April 5, 2007[.]" Id. at 978 and 979.
11 Consequently, allowing Fidelity to register the Washington
12 Registered Judgment in this court, where its First Arizona
13 Registered Judgment has been vacated because it was not timely
14 "re-registered," would be allowing Fidelity to circumvent
15 Arizona's statute of limitations  - a result this court cannot
16 condone.

17     Furthermore, allowing Fidelity to register the Washington
18 Registered Judgment in Arizona under the facts of this case
19 would "create the possibility of a cascading fountain of re-
20 registered judgments[,]" which the De Leon I court warned
21 against.  See De Leon I, 742 F.Supp.2d at 1176. As that court
22 rightly foresaw, "[w]hatever uncertainties and difficulties
23 arise from allowing a judgment in one jurisdiction to be
24 registered and enforced in another will be magnified ——
25 potentially exponentially —— when the registered judgment can,

26

27 _____
        [10]      Section 12-544(3) requires that an action "[u]pon a judgment
28 . . . rendered without the state" be "commenced ... within four years after
   the cause of action accrues [.]" A.R.S. § 12-544(3).

in turn, be re-registered and enforced elsewhere, independently of the original judgment." _Id._  The court went on to illustrate how that "complexity" would "be further compounded by the sale of certain judgments to different holders, all of whom may be seeking to collect against the assets of the judgment debtor." _Id._ (footnote omitted).

"Plaintiff's version of the rule," _i.e._, allowing re-registered judgments to be re-registered and enforced elsewhere, independently of the original judgment[,]" would necessitate "a lengthy, imprecise, and potentially recursive untangling" of such judgments. _Id._  By way of example, the court hypothesized that "a Georgia-registered judgment in dispute" would have to be "traced back to a Vermont-registered judgment, which itself derived from a Virginia-registered judgment, which may be traceable to a _different_ Georgia-registered judgment, etc." _Id._ (emphasis in original).  Like the _De Leon I_ court, this court also cannot condone such a "a web of interlocking and recursive registration, re-registration, and re-re-registrations[,]" _id._ at 1177, especially where, as here, the First Arizona Registered Judgment was not timely re-registered under Arizona law.

In contrast, one clear advantage of "a scheme in which only the original judgment can be registered, [is that] every re-registered judgment relates back to a single source by a single transaction." _Id._  This means that "[a] party or court having concerns about the validity of a registered judgment need only trace back the matter one level —- from the registration state to the original judgment." _Id._ (footnote

1  omitted).  "Satisfaction or partial satisfaction of the
2  registered judgment can be reflected by a notation on the
3  original judgment, supplying notice of partial satisfaction to
4  anyone reviewing the registration of that original judgment in
5  another jurisdiction."  Id.  Thus, "a scheme that treats
6  registered judgments and domestic judgments similarly for in-
7  state enforcement purposes -- thus satisfying the statutory
8  requirements of § 1963 -- but denies registered judgments the
9  capability of being re-registered elsewhere[,]" avoids "[t]he
10 mischief of recursive registration and judgment creation[.]"[11]
11 Id.

12      For all of these reasons, the court finds that Fidelity
13 impermissibly filed the Washington Registered Judgment in this
14 court pursuant to 28 U.S.C. § 1963.  Accordingly, the court
15 hereby **GRANTS** defendants' motion to "vacate the certification
16 of judgment for registration in another district[,]" Mot. (Doc.
17 9) at 1:16-17 filed in this court on July 7, 2011.  The
18 granting of this motion renders moot defendants' secondary
19 argument that because the Washington Registered Judgment "is

21      [11]   The last issue addressed in De Leon I was plaintiff's suggestion
22 that the revived Illinois judgment was equivalent to "a 'judgment on a
   judgment.'" De Leon I, 742 F.Supp.2d at 1177.  Fidelity is not making a
23 similar suggestion in this case. Hence, the court need not consider whether
   the Washington Registered Judgment is equivalent to a judgment on a
24 judgment.  The court observes, however, that the same reasons which
   prevented the De Leon I court from treating the Illinois judgment as a
25 judgment on a judgment preclude treating the Washington Registered Judgment
   as a judgment on a judgment.  More specifically, as in De Leon I, because
26 the Washington Registered judgment "did not include a Summons, Certificate
   of Service, or any other indication" that at the time of registration
27 Fidelity gave notice to defendants of that registration, this court could
   not find that such judgment was equivalent to the Washington court "having
28 duly adjudicated an adversarial proceeding and issued a 'judgment on a
   judgment.'" See id. at 1178 (footnote omitted).

1  void for lack of due process and personal jurisdiction, it
2  cannot be the basis for the registration of a new judgment in
3  Arizona." <u>See</u> <u>id.</u> at 19:17-18.

4       DATED this 9th day of April, 2013.

7  _____
   Robert C. Broomfield
8  Senior United States District Judge

17 Copies to counsel of record

- 29 -